999 So.2d 1072 (2008)
Tracy CLEMENT, Eric Clement, and Paul Sween, Appellants,
v.
Gary D. LIPSON, as Receiver, etc., et al., Appellees.
No. 5D07-4177.
District Court of Appeal of Florida, Fifth District.
November 21, 2008.
Rehearing Denied February 4, 2009.
*1073 David Schwartz & Hala Sandridge of Fowler White Boggs Banker P.A., Tampa, for Appellants.
Frank M. Bedell of Winderweedle, Haines, Ward & Woodman, P.A., Orlando, for Appellee, Gary D. Lipson.
COHEN, J.
Appellants, Eric Clement, Tracy Clement, and Paul Sween, challenge the trial court's denial of their motion to dismiss for lack of personal jurisdiction. The issue is whether long-arm personal jurisdiction can be asserted over them for torts committed by the limited liability company of which they were managers. Because there is no basis to assert long-arm jurisdiction, we reverse.

*1074 FACTUAL AND PROCEDURAL HISTORY

Universal Luxury Coaches, LLC ("ULC"), is a Delaware limited liability company owned by co-defendants, Scott Spor and Nevada Coach Partners, LLP. ULC's office is in Sanford, Florida, and its managers were Eric Clement, Tracy Clement, Paul Sween, Conrad Clement, Scott Spor, and James Wooley. ULC was formed to sell timeshare interests in luxury motor coaches. In June 2002, ULC submitted its initial timeshare plan, which contained an investment feature, along with advertising materials to the Department of Business and Professional Regulation ("DBPR") for approval. The DBPR rejected both the timeshare plan and advertising plan because they referred to and included an investment feature. Subsequently, ULC removed the investment feature, withdrew the related advertising materials, and resubmitted its timeshare plan. DBPR approved this revised timeshare plan.
Notwithstanding the prior rejection of the investment feature, ULC began selling timeshare interests with an investment component. Although somewhat modified from the investment feature DBPR rejected, ULC promised a ten percent return if investors signed a rental program agreement. Between December 1, 2002, and December 31, 2003, ULC sold approximately $8 million worth of timeshare interests to 172 investors, 61 of whom were Florida residents. After receiving numerous requests from investors to opt out of the program and for a return of their monies, ULC was able to return only about $1 million.
By order dated October 5, 2004, Gary D. Lipson was appointed ULC's receiver in a companion case, State of Florida, Office of Financial Regulation v. Universal Luxury Coaches, LLC, No. 04-CA-2130-16-W (Fla. 18th Cir.Ct. Oct. 5, 2004). The order appointing him receiver authorized and directed Lipson to file suit on behalf of ULC for the benefit of its aggrieved investors and creditors. Subsequently, he filed a ten-count second amended complaint against Appellants, individually, and a number of other corporate entities and individuals for their involvement or participation in selling these timeshare interests. According to the second amended complaint, the sale of the timeshare interests was unlawful and fraudulent because numerous fraudulent misrepresentations and omissions were contained in both the marketing materials provided to the investors and the internal materials provided to the salespeople. The second amended complaint sought damages from Appellants for selling unregistered securities, securities fraud, fraudulently selling investments, negligent mis-representation, violating Florida's Timesharing Act, and fraudulent transfers.
Appellants moved to dismiss the complaint for lack of personal jurisdiction, accompanied by supporting affidavits. After conducting limited discovery, Lipson filed Appellants' depositions in opposition to the motion to dismiss. After conducting a hearing, the trial court denied their motion to dismiss.

STANDARD OF REVIEW
A lower court's ruling on a motion to dismiss for lack of personal jurisdiction is reviewed de novo and involves a two-step analysis. Wendt v. Horowitz, 822 So.2d 1252, 1256 (Fla.2002). The first inquiry is whether the complaint alleges sufficient jurisdictional facts to bring the non-resident defendants within the ambit of the long-arm statute. Id. at 1257. The second is whether sufficient minimum contacts exist to satisfy the Fourteenth Amendment's due process requirements. *1075 Id.; Doe v. Thompson, 620 So.2d 1004, 1005 (Fla.1993).
A defendant challenging the allegations of personal jurisdiction must file an affidavit supporting his position that long-arm jurisdiction is inappropriate. Doe v. Thompson, 620 So.2d at 1005. The plaintiff must then demonstrate the basis for long-arm jurisdiction by filing a counter-affidavit or other evidence, like a deposition transcript. Id.; Wendt v. Horowitz, 822 So.2d at 1255 (approving plaintiff's use of deposition transcripts for the court to consider in passing upon motion to dismiss for lack of personal jurisdiction). If the affidavits or depositions conflict, then the trial court should hold a limited evidentiary hearing. Doe v. Thompson, 620 So.2d at 1005.

DISCUSSION
Tracy Clement and Paul Sween are residents of Minnesota; Eric Clement is a resident of Iowa. The complaint alleges personal jurisdiction over Appellants by generally alleging that they operated, conducted, or carried on a business venture in Florida and personally committed tortious acts that caused injury in Florida. See § 48.193(1)(a), (b), Fla. Stat. (2003). The trial court found that Appellants operated, conducted, or carried on a business in the state. This conclusion was predicated on findings that Appellants were managers of ULC, communicated by e-mail, phone, and fax with ULC's office in Sanford, discussed strategy for selling timeshares during ULC's corporate meetings, and received $9000 for providing consulting services to ULC. Critical to the trial court's decision was an e-mail attached to Paul Sween's deposition indicating that "ULC Managers operated or managed the company."
Appellants' affidavits, filed in support of their motion to dismiss, are all substantially similar and state that they do not own property, bank accounts, hold any type of license, or conduct personal business in Florida. The affidavits also state that Appellants were not personally involved in any of ULC's business transactions, did not participate in forming or capitalizing ULC, and did not arrange or participate in any transactions between ULC and Featherlite Coaches, Inc. Most importantly, the affidavits state:
20. I was not personally involved in the selling or offering for sale of ULC's timeshare plan. I did not direct anyone else to sell or offer ULC's time share plan. I had no authority or control over any of the ULC salespeople who sold or solicited the sale of timeshare interests. I also had no contact or communications with any of ULC's salespeople.
21. I did not personally make any statements or representations to any potential investor or customer regarding ULC's timeshare plan.
22. I did not participate in the development, marketing, promotion, advertisement, use of or sale of interests in ULC's timeshare plan.
23. I did not participate in the development or disbursement of any of ULC's advertising materials, ULC's public offering statement, or ULC's representation of the Department of Business and Professional Regulation's approval of ULC's public offering statement.
The depositions filed by Lipson indicated that Appellants were managers of ULC. In their capacity as managers, Appellants attended ULC's board meetings. With the exception of the first meeting, which Tracy and Eric Clement personally attended in Daytona Beach, Florida, Appellants attended the board meetings by phone. At these meetings, Appellants reviewed and approved budgets, as well as discussed selling timeshares. The agenda for board meetings, board meeting minutes, and other ULC related business were sent to Appellants *1076 by e-mail from ULC's office in Sanford, Florida. Appellants would also call the ULC office to correct items in the meeting minutes or agenda. Appellants also received from ULC a $9000 check with the notation, "payment for consulting services." However, Appellants never provided consulting services and believed the checks were a return on their investment in Nevada Coach Partners, LLP. Appellants did not take part in the decision to disburse these checks. Other than attending board meetings, Appellants unequivocally testified that they did not provide any services to ULC.[1]
The affidavits refute the allegations in the complaint to the extent it alleges Appellants personally drafted, developed, marketed, or sold the timeshare interests. The affidavits also state that Appellants did not make any representations to any potential investor about the timeshare program. The depositions Lipson filed to support long-arm jurisdiction do not conflict with the affidavits. Even viewing them in the light most favorable to upholding the trial court's ruling, they do not support the finding that Appellants conducted a business venture or committed a tortious act in Florida. Instead, they indicate that Appellants only acted in their capacity as managers of ULC. Consequently, their actions are shielded by the corporate shield doctrine and personal jurisdiction may not be asserted over them. See Doe v. Thompson, 620 So.2d 1004. Furthermore, because the affidavits and depositions do not conflict, Lipson failed to sustain his burden of showing the basis upon which long-arm personal jurisdiction could be asserted.
The trial court's reliance on an e-mail sent by Sween indicating that managers operated the company does nothing to alter this conclusion. Rather, it supports the conclusion that Appellants only acted in their capacity as corporate officers. Finally, Lipson's argument that long-arm jurisdiction may be asserted against Appellants because he alleged fraud is unpersuasive. The count seeking to void allegedly fraudulent transfers is not an independent tort upon which long-arm jurisdiction can be exercised. See Brown v. Nova Info. Sys., Inc., 903 So.2d 968, 969 (Fla. 5th DCA 2005). Furthermore, contrary to Lipson's assertion, the counts alleging securities fraud and fraudulent sales of investment are not tantamount to common law actions for fraud. Because both of these actions are predicated on a violation of section 517.211, Florida Statutes, Lipson is required to show that Appellants personally induced the investors to purchase the securities or investments. See Ruden v. Medalie, 294 So.2d 403, 406 (Fla. 3d DCA 1974); Dillon v. Axxsys Int'l, Inc., 385 F.Supp.2d 1307, 1310-11 (M.D.Fla.2005). The affidavits refute any allegations that support this allegation, and nothing in the depositions indicates to the contrary. Accordingly the allegations underlying these actions cannot sustain the exercise of long-arm jurisdiction.
REVERSED.
ORFINGER and TORPY, JJ., concur.
NOTES
[1] Eric Clement also served as ULC's secretary for some time. In this capacity, he took notes of the board meetings and distributed them for clarification to ULC's other managers.